UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BENJAMIN ZIKE,

          Petitioner,

v.                                            Case Number 07-13229-BC
                                            Honorable Thomas L. Ludington
JAN E. TROMBLEY,

          Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner Benjamin Douglas Patrick Zike, a Michigan prisoner currently confined at the Pine River Correctional Facility in St. Louis, Michigan,[1] filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. On March 19, 2004, Petitioner was convicted by jury in an Ottawa County Circuit Court of armed robbery, Mich. Comp. Laws § 750.529, kidnapping, Mich. Comp. Laws § 750.349, and carjacking, Mich. Comp. Laws § 750.529(a). On April 19, 2004, he was sentenced to three consecutive terms of fifteen to thirty years in prison. In his habeas petitioner before this Court, Petitioner alleges that he was denied his rights under the Confrontation Clause of the U.S. Constitution. Respondent argues that his claim lacks merit. For the reasons stated below, the petition will be denied.

---

[1] Petitioner was incarcerated at the Saginaw Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Pine River Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the case caption would be amended. However, there is no reason to do so here because the petition will be denied.

I

Petitioner's convictions arise from an incident that occurred on January 24, 2003, at the CVC Vending Company in Hudsonville, Michigan. Ron Hedum, a CVC employee, while loading money and other items into a truck at CVC Vending, was robbed by a masked man carrying a rifle. The prosecution's case relied significantly on an audiotape containing statements made by Petitioner and secretly recorded by one of Petitioner's former friends, Richard Rupright. Prior to trial, the defense moved to suppress Petitioner's statements. Following a hearing held on March 12, 2004, the trial court denied the motion. Throughout the trial, Petitioner's theory of defense was that he was with his girlfriend, Stephanie VandeCreek, at the time the crimes were committed, and that the crimes were committed by Kurt Owens, another CVC employee.

Hedum testified first at trial. He testified that, in the early morning hours of January 24, 2003, he was loading money into his truck when he was approached by a masked man carrying what he believed to be a rifle. He said the man took his truck keys, placed a hood over his head, and placed him in the back of his truck. According to Hedum, the truck traveled for approximately ten minutes, after which he heard the door open. He testified that he heard two people unload the contents of the truck, then the men then moved him to the cab of the truck, removed his hood, and left. He did not actually see the men.

Rupright, the informant who secretly recorded a conversation with Petitioner, was not available to testify at trial, but his preliminary examination testimony was admitted into evidence, over a continuing defense objection to the admission of the recording. According to Rupright, he and Petitioner had once been friends, but he had not seen Petitioner in about three years. Rupright testified that in mid-March of 2003, he was pulled over by Officer Tim Simon of Oceana County

and arrested for drunk driving, which was his third offense. He testified that he was subsequently contacted by Officer Simon and was told that Petitioner "was up to something no good." Trial Tr. vol. I, 152, Mar. 16, 2004. Officer Simon told Rupright that if he learned information about Petitioner's suspected criminal activity, Officer Simon could help him avoid jail time on his drunk-driving charge.

Rupright testified that he purchased a tape recorder and took it with him to Petitioner's home. Rupright testified that when he got to Petitioner's house, the two men sat, drank beer, talked, and then went for a car ride. During the car ride, the taped conversation took place. Rupright testified that Petitioner told him about committing the robbery of the CVC truck driver and said that he had an inside informant. Before turning the tape recording over to the police, Rupright testified that he erased the first five-minutes of the tape. He said that portion contained no discussion of Petitioner's criminal activities and in his judgment was not relevant. On cross-examination, the following exchange occurred:

> Q. And then, without any – no conversation occurs, after you turn on the tape, until he starts telling you about this armed robbery?
>
> A. No, there was conversation.
>
> Q. In the car?
>
> A. Correct.
>
> Q. All right. Well, I thought you said you turned on the tape as soon as you got in the car.
>
> A. Pretty much, yes.
>
> Q. Pretty much, okay. So what kind of conversation occurred before he starts talking to you about the armed robbery?
>
> A. Well he was BSing about partying and things we had been doing in the past.
>
> Q. So you were just BSing about partying and things you had been doing in the past, and then, out of the blue, he spits out, "Oh, I did an armed robbery in Hudsonville?"
>
> A. No. I asked him if–I played off like I needed to make some quick money, so I

asked him if he had any ideas.

Q. Okay. Now that should be on the tape, then; right?

A. I don't know if it is or not. I mean, it should be. The tape recorder was on.

Trial Tr. vol. I. 167, Mar. 16, 2004.

At trial, the audiotape and written transcriptions of the recording were admitted into evidence. The parties stipulated to the fact that Rupright was convicted in 2000 of counterfeiting and/or uttering and publishing, that he had fled the jurisdiction and that there was an outstanding warrant for his arrest as well as outstanding felony and misdemeanor warrants. The tape was played in open court for the jury. The transcriptions were prepared as an aid to the jurors because the tape was difficult to hear. Of particular significance, the transcript reveals that Petitioner stated the following:

> I did an armed robbery with a gun and shit down in Hudsonville . . . . I hijacked a fucking semi. I got lots of money . . . . In Hudsonville. The Vending Corporation . . . I can get like an inside tip maybe to figure out where the semis have been . . . . I knew what time. When I pulled up, I grabbed the bags and shit . . . fucking tied his hands behind his back. I threw a thing over his head. Pushed him inside on the seat.

*See* [Dkt. # 1, p. 23-25].

Officer Simon testified next. He testified that he had arrested Rupright in January of 2003 for drunk driving, and then approached him in March of 2003 about "set[ing] him up with something." Trial Tr. vol. I, 188, Mar. 16, 2004. The officer told Rupright that it would benefit him on his third drunk driving charge if he cooperated. Officer Simon testified that, on March 18, 2003, Rupright presented him with the audiotape. Rupright's felony charge was dropped to a misdemeanor of drunk driving, second offense, and he was sentence to one year in the county jail.

Hudsonville Police Chief Michael Wierenga testified that he was contacted by Officer Simon

and informed that Officer Simon had information regarding the armed robbery. Chief Wierenga testified that he then assisted in executing a search of Petitioner's home. Canvas money bags, bank bags, coin wrappers, and a large number of coins were recovered.

Wayne Vaughn, who was on parole for manufacturing and delivering controlled substances at the time of Petitioner's trial, testified that they were inmates together at the Ottawa County Jail where Petitioner admitted that he and Kurt Owens, a CVC employee, committed the robbery. After Vaughn reported that to the police, the felony charges against him were dropped to misdemeanors. Vaughn testified that when Petitioner learned that he was going to testify against him, Petitioner threatened him.

After the CVC robbery occurred, police contacted local stores with "Coin Star" machines in anticipation that the perpetrator would try to exchange a large quantity of coins for bills. Jean Semelbauer, a store detective for a Meijer store testified that on March 11, 2003, she saw a man, identified as Petitioner, trying to cash in $700 worth of coins at the machine in the store where she worked. Aaron Foster, a former retail clerk at a Shelby BP station, confirmed that Petitioner was one of three people who purchased over $100.00 worth of alcohol with coins at the station in March 2003.

Deputy Jeremy King of the Mason County Sheriff's Department stopped Petitioner's car on March 14, 2003, for a traffic stop, and during a consensual search of the interior that found two handbags filled with quarters. Passenger Stephanie VandeCreek said the handbags belonged to her.

Michael Kotula, a former district manager at CVC Vending, testified that $54,799 was taken in the January 2003 robbery, $40,000 of it in coins. He later identified the money bags that were taken in the robbery. He confirmed that Owens was a route supervisor for CVC.

Matthew Brady testified next. He said that he was incarcerated with Petitioner and Vaughn in the Ottawa County Jail shortly after Petitioner's arrest. He said Vaughn told him that if he would "d[o] the same thing" that he had done he "would get off, because the prosecution was hard up to nail Ben [Petitioner]." Trial Tr. vol. II, 105, Mar. 17, 2004.

Stephanie VandeCreek testified that Petitioner had told her about a robbery that Owens committed and said he was "changing in" the money for Owens. Trial Tr. vol. II, 140, Mar. 17, 2004. However, she testified that on the night of the robbery she was with Petitioner at a bar.

Petitioner testified on his own behalf. He testified that Owens asked him if he wanted to make some money and gave him five money bags of coins, which Owens removed from the trunk of his car. According to Petitioner, Owens said he had gotten the money illegally and told him he would pay him if he turned the coins in at casinos and Coin Stars. A couple of days later, after Petitioner had "unloaded" some of the coins, Owens told him about the CVC robbery. Trial Tr. vol. III, 22, Mar. 18, 2004. Petitioner testified that Owens paid him about three thousand dollars for unloading the money. Petitioner did not dispute that he had told Rupright about the robbery, and he testified that he had boasted about his involvement because he wanted to take credit for having committed the crime when he talked to Rupright. According to Petitioner, the first ten minutes of his meeting concerned Rupright trying to get him to get some drugs for him, which explained why Rupright erased that portion of the tape. Petitioner also agreed that he had tried to cash in coins at the Coin Star machine at Meijer, that he had used coins to buy liquor, and that he had been pulled over by police who found coins in Stephanie VandeCreek's purse.

At the conclusion of the trial, the jury found Petitioner guilty of armed robbery, kidnapping, and carjacking. However, the jury found him not guilty of the additional charged offenses of felon

in possession of a firearm and possession of a firearm during the commission of a felony.

Following his sentencing, Petitioner, through counsel, filed his claim of appeal with the Michigan Court of Appeals, raising the following two claims:

   I.   [Petitioner] was denied his Sixth Amendment right of confrontation when the trial court admitted the preliminary examination testimony of an unavailable witness, Richard Rupright, under circumstances where [the petitioner] did not have the opportunity to develop critical testimony.

   II.  [Petitioner] was unfairly prejudiced when the trial court, contrary to the rule of completeness, admitted into evidence a tape recording from which prosecution witness Richard Rupright had erased significant portions.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Zike*, No. 257587, 2006 WL 399649 (Mich. Ct. App. Feb. 21, 2006). The Michigan Supreme Court denied his application for leave to appeal. *People v. Zike*, 720 N.W.2d 290 (Mich. 2006).

II

On August 2, 2007, Petitioner filed the habeas petition now before this Court, contending that he was denied his Sixth Amendment right of confrontation based on the admission of Rupright's preliminary-examination testimony. Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Petitioner's application was filed after that date, and therefore, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, "[t]he state court's application [of federal law] 'must have been objectively unreasonable.' " *Wiggins*, 539 U.S. at 521 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Additionally, this Court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) ("All factual findings by the state court are accepted by this Court unless they are clearly erroneous.") (citing *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995)).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

* * *

> A state-court decision will also be contrary to [the Supreme Court's] clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law . . . . Under § 2254(d) (1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11. *See also Dorchy v. Jones*, 398 F.3d 783, 787-88 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses includes the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). In addition, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("[T]he right to cross-examine includes the

opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.") (citing *United States v. Abel*, 469 U.S. 45, 50 (1984), and *Davis v. Alaska*, 415 U.S. 308, 316 (1974)).

Generally, "testimonial" hearsay evidence may not be admitted against a criminal defendant unless the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 58-59 (2004). In *Crawford*, the Court did not provide a "comprehensive definition" of "testimonial," *id.* at 68 n.10, but noted that "testimony" is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact," *id.* at 51 (quotations omitted). The Court also explained that "testimonial" hearsay includes, at a minimum, "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. In contrast, testimonial hearsay evidence does not include something like "a casual remark to an acquaintance." *Id.* at 51.

Petitioner raised this claim on direct appeal but the Michigan Court of Appeals rejected it, stating:

> Defendant argues that the introduction of his acquaintance's preliminary examination testimony at trial violated his right of confrontation. Specifically, defendant argues that because the tape-recorded conversation was not played at the preliminary examination, he did not have a similar motive to develop the testimony. We disagree. We review for an abuse of discretion a trial court's decision to admit evidence. However, we review de novo preliminary questions of law such as decisions regarding the admission of evidence, e.g., whether a rule of evidence precludes admissibility of the evidence. It is an abuse of discretion to admit evidence that is inadmissible as a matter of law. A defendant has the right to be confronted with the witnesses against him. The preliminary examination testimony of an unavailable witness is admissible at trial if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony through cross-examination. Whether a party had a similar motive to develop the witness's testimony through cross-examination depends on the similarity of the issues for which the testimony was presented at each proceeding.

> The prosecution elicited the testimony of defendant's acquaintance at the preliminary examination to establish that defendant committed the armed robbery. The preliminary examination testimony was introduced at trial for the same purpose. Although the tape-recorded conversation was not played at the preliminary examination, most of the preliminary examination testimony of defendant's acquaintance centered on the tape: why he made the tape and the conversation that was recorded on the tape. Defendant had a motive to cross-examine his acquaintance on the making and contents of the tape-recorded conversation. Indeed, defendant's acquaintance was cross-examined at the preliminary examination on the four areas about which defendant argues he would have inquired at trial. The trial court did not abuse its discretion in admitting the preliminary examination testimony of defendant's acquaintance.

*Zike*, 2006 WL 399649, at *1 (citations omitted).

Clearly, Rupright's preliminary examination testimony constituted "testimonial hearsay" under *Crawford*. 541 U.S. at 68. Thus, its admission violated the Confrontation Clause unless Rupright was unavailable to testify, and Petitioner had the opportunity to cross-examine him. *See id.* In determining whether a witness is "unavailable," the definition of "unavailability" in Federal Rule of Evidence 804(a) provides a useful guide. *See, e.g.*, *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1055 (6th Cir. 1983).

Under Rule 804(a), a declarant is unavailable when the prosecution is "unable to procure the declarant's attendance . . . by process or other reasonable means." Fed. R. Evid. 804(a)(5). In order for a witness to be "unavailable" for constitutional purposes, the proponent of the evidence must have undertaken "good faith efforts" to procure the subject witness's attendance. *Ohio v. Roberts*, 448 U.S. 56, 74-75 (1980) ("The lengths to which the prosecution must go to produce a witness is a question of reasonableness."); *Winn v. Renico*, 175 F. App'x 728, 733 (6th Cir. 2006) (applying *Roberts*). The question of whether a party's efforts have been made in good faith is a question of degree. *See Barber v. Page*, 390 U.S. 719, 724-25 (1968). Under the AEDPA, the issue is whether the state court's finding that the prosecution made a diligent, good faith effort was reasonable. *See*

*Swanson v. Renico*, No. 00-10273-BC, 2004 WL 192953, at *9 (E.D. Mich. Jan.22, 2004); *Cooper v. McGrath*, 314 F. Supp. 2d 967, 985 (N.D. Cal. 2004).

Here, as the prosecutor explained at trial, witness Rupright was constitutionally "unavailable" to testify at trial:

> We just want to make it clear to the jury that Mr. Rupright has a warrant out of Muskegon County for him. He has fled the jurisdiction. We don't know where he is. We have looked for him, but he, the last we knew, he was healthy, alive.

Trial Tr. vol. II, 80, Mar. 17, 2004. The prosecutor and defense counsel stipulated on the record that "Rupright was not here to testify at trial." Trial Tr. vol. II, 79, Mar. 17, 2004. Petitioner does not challenge the fact that Rupright was constitutionally unavailable to testify at trial.

Nevertheless, Petitioner argues that he did not have a constitutionally adequate prior opportunity to cross-examine Rupright at the preliminary examination. Petitioner asserts that the prosecution's motivation for soliciting Rupright's testimony at the preliminary examination was to establish a foundation, but "not for the truth of the matter." Petitioner emphasizes that the judge stated at the examination that "the Court will accept it and will not assume the truth of the matter asserted, but only consider it as by way of foundation and explaining what the witness did and why he did it." Preliminary Examination Hr'g Tr. vol. I, 51, July 30, 2003.

However, the judge was not referring to Rupright's entire testimony, but rather, a small portion of that testimony in which Rupright explained how he had come to tape Petitioner's incriminating statements:

> [Prosecutor]: Did Detective Simon, did he give you any incentive to have contact with [the petitioner]?
>
> [Rupright]: Um, yes and no. I'd say, yes, because he said he could probably help me out, you [k]now.
>
> [Prosecutor]: How would he help you out?

> [Rupright]: Um, not going to jail for it.
>
> [Prosecutor]: Okay, so what would you have to do for him to help you out?
>
> [Rupright]: Just get details on what [Petitioner] had done.
>
> [Prosecutor]: If anything?
>
> [Rupright]: Yeah. Well, he said that he knew that he had done something, and he just wanted me to –
>
> [Defense Counsel]: I'm gonna, I guess, object to the hearsay.
>
> [Prosecutor]: I'm not using it for the truth of the matter asserted, your Honor, but there is, I guess, somewhat interesting situation how [Petitioner], after a period of delay – excuse me – how Mr. Rupright, after a period of delay, would have contact with [Petitioner], and there are some, I guess, unusual circumstances involving a tape recording, so I'm kind of getting into that as to why Rupright did what he did.

Preliminary Examination Hr'g Tr. vol. 1, 49-50, July 30, 2003. The trial court's statement that it would "not assume the truth of the matter asserted" is a ruling on a specific hearsay objection by Petitioner's counsel in respect to one aspect of Rupright's preliminary examination testimony. *See* Fed. R. Evid. 801(c), advisory committee note (explaining that "verbal acts" are not hearsay when "no issue is raised as to the truth of anything asserted" when "the significance of an offered statement lies solely in the fact that it was made"). Contrary to Petitioner's assertion, the judge's statement does not imply that Petitioner did not have a meaningful opportunity to cross-examine Rupright at the preliminary examination.

Rather, the preliminary examination record demonstrates that the petitioner's counsel, indeed, cross-examined Rupright about the central issues in the case. Defense counsel cross-examined Rupright about his then-recent arrest for operating a vehicle under the influence of liquor (OUIL), third offense, which went to Rupright's possible motivation for cooperating with the authorities and tape-recording Petitioner. Defense counsel also extensively cross-examined Rupright about his interactions with Officer Simon, the lead investigator, as well as with respect to

-13-

his relationship over the years with Petitioner.

Most importantly, defense counsel also extensively cross-examined Rupright about the events that occurred on the day that the audio recording was made as well as the audio recording itself. In fact, defense counsel's cross-examination was so thorough that he caused the prosecutor to elicit on re-direct examination that Rupright had deleted at least the first five minutes of the audio tape. Defense counsel then subjected Rupright to questioning on this specific issue during re-cross-examination. Based on the above, Petitioner's "[c]ounsel does not appear to have been significantly limited in any way in the scope or nature of his cross-examination of the witness at the preliminary hearing." *California v. Green*, 399 U.S. 149, 166 (1970). In light of the extensive cross-examination of Rupright at the preliminary examination, the state court adjudications of this claim were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts. Petitioner is not entitled to habeas relief regarding this claim.

### III

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. Here, Petitioner has not made a substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Furthermore, Petitioner will be denied leave to proceed in forma pauperis on appeal as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt # 1] is **DENIED**.

It is further **ORDERED** that Petitioner is **DENIED** a certificate of appealability and leave to proceed in forma pauperis on appeal.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: July 7, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 7, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS